UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

G. Thomas Ruff,
    Plaintiff,
v.

Civil Action 2:14-cv-593
CHIEF JUDGE EDMUND A. SARGUS, JR.
Magistrate Judge Elizabeth P. Deavers

Bakery, Confectionery, Tobacco
Workers & Grain Millers & Industry
International, et al.,
    Defendants.

## OPINION AND ORDER

After Plaintiff G. Thomas Ruff lost his job, he brought this suit against the Bakery, Confectionery, Tobacco Workers & Grain Millers International Union ("International"), the Bakery and Confectionery Union & Industry International Pension Fund ("Pension Fund"), and the Bakery, Confectionery, Tobacco Workers and Grain Millers Local 57 ("Local 57"). International and Pension Fund now move to dismiss Ruff's claims against them pursuant to Federal Rule of Civil Procedure 12(b)(6). (ECF No. 29.) Their motion does not implicate the claims against Local 57. Ruff filed a response in opposition and also moves the Court to strike the motion to dismiss. (ECF No. 32.) Ruff also moved for reconsideration and clarification of this Court's decision to deny his amended motion to remand. (ECF No. 44.) Last, Ruff moved for default judgments against International, Pension Fund, and Local 57. (ECF Nos. 46, 48, 50.) For the reasons that follow, the motion to dismiss (ECF No. 29) is **GRANTED**, and Ruff's motions to strike (ECF No. 32), for reconsideration and clarification (ECF No. 44), and for default judgment (ECF Nos. 46, 48, 50) are **DENIED**.

1

## I. BACKGROUND

Ruff worked as an employee of the Columbus Bakery until September 30, 2004 when he was laid off. (Compl. ¶¶ 8, 18; ECF No. 2; *see also* Severance Worksheet; ECF No. 2-2.) During this time, he was a member of Local 57. (*Id.* ¶ 9.) Under a 2004 collective bargaining agreement ("2004 CBA"), he was entitled to a $400 severance payment, which he could collect at the time of severance or defer for twelve months to leave open the possibility that that he would be recalled to work should an opening become available. (CBA at 18; ECF No. 29-2; *see also* Compl. ¶ 10.)[1] Ruff chose the deferment option (Severance Worksheet), but was never recalled to an open or applicable replacement position, (Compl. ¶ 21). He thereafter "received [his] severance payment . . . in compliance with the terms and provisions set forth in the agreement." (Compl. ¶ 22.)

In 2014, Ruff filed suit, alleging that his union did not prevent his layoff from ripening into a permanent severance from service or that it did not protect him from the subsequent determination that he could not qualify for pension benefits. (*See generally* Compl. ¶¶ 15-48.) International and Pension Fund move to dismiss the claims against them, arguing that neither had any role in representing Ruff's interests as a unionized employee.

---

[1] Because Ruff's complaint includes numerous references to the 2004 CBA, the Court may consider that agreement without transforming the motion to dismiss into a motion for summary judgment. *See Rondigo, L.L.C. v. Twp. of Richmond*, 641 F.3d 673, 680-81 (6th Cir. 2011) ("[A] court may consider exhibits attached [to the complaint] . . . and exhibits attached to defendant's motion to dismiss so long as they are referred to in the complaint and are central to the claims contained therein, without converting the motion to one for summary judgment.") (internal quotation marks omitted).

## II. STANDARD

### A. Pro Se Litigants

Ruff represents himself in this proceeding. A pro se litigant's pleadings are to be construed liberally and held to a less stringent standard than are formal pleadings drafted by lawyers. *Haines v. Kerner,* 404 U.S. 519, 520–21, 92 S.Ct. 594, 30 L.Ed.2d 652(1972); *Estelle v. Gamble,* 429 U.S. 97, 106, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). A court should make a reasonable attempt to read the pleadings of a pro se litigant to state a valid claim on which the plaintiff could prevail, despite any failure to cite proper legal authority, confusion of various legal theories, poor syntax and sentence construction, or unfamiliarity with pleading requirements. *Ashiegbu v. Purviance,* 74 F.Supp.2d 740, 749 (S.D.Ohio 1998) (citing *Hall v. Bellmon,* 935 F.2d 1106, 1110 (10th Cir.1991)).

### B. Motion to Dismiss

In evaluating Ruff's Complaint to determine whether it states a claim upon which relief can be granted, the Court must construe it in Ruff's favor, accept the factual allegations contained in the pleading as true, and determine whether the factual allegations present any plausible claim. *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570, (2007); *see also Ashcroft v. Iqbal,* 556 U.S. 662, (2009) (clarifying the plausibility standard articulated in *Twombly*). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 556 U.S. at 678. The factual allegations in Ruff's pleadings "must be enough to raise a right to relief above the speculative level." *Twombly,* 550 U.S. at 555.

3

### III. DISCUSSION

The Court begins by resolving two issued raised by Ruff in his opposition to the motion to dismiss: whether the defendants could file the motion in the first place, and whether the defendants asserted the collective bargaining agreement as a defense "insufficient to trigger preemption," and thus allowing Ruff "to assert [his] claims . . . exclusively under state law." (Opp. at 4.) Then, the Court turns to the merits of the defendants' arguments: whether Ruff's complaint states a facially plausible claim.

### A. Propriety of the Motion to Dismiss

As a threshold matter, Ruff challenges the motion to dismiss by arguing that the motion is improper because "Federal [R]ule Civ. P. 7(a) does not recognize a motion to dismiss as a responsive pleading." (Opp. at 6.) True enough. But "Fed. R. Civ. P. 12 clearly contemplates that a motion to dismiss . . . may be filed before an answer is required." *Bennett v. Gen. Caster Serv. of N. Gordon Co.*, 893 F.2d 1334 (6th Cir. 1990) (table). Therefore, the motion is proper.[2]

### B. Preemption

Ruff also argues in his opposition that International and Pension Fund asserted the collective bargaining agreement as a defense, which is "insufficient to trigger preemption." (Opp. at 4.) But as the Magistrate Judge concluded in her Report and Recommendation denying

---

[2] The Court also notes that, contrary to Ruff's assertions, the defendants timely made this filing. Under Fed. R. Civ. P. 81(c)(2)(B), the defendants had until July 7, 2014 to respond (21 days after they were served on June 16, 2014). Before July 7, they requested an extension, which the Court granted, and then they timely filed the motion to dismiss. Ruff also moved for entry of a default judgment against International and Pension Fund (ECF Nos. 46 & 48), attaching an affidavit in which he avers that International and Pension Fund were served on June 9, 2014. (Aff. ¶ 2; ECF No. 46-1 and 48-1.) But Ruff does not explain how he knows when these defendants were served. *See* Fed. R. Evid. 602 (requiring a witness have personal knowledge in order to testify). And, the record does not support his contention, as it shows that these defendants were served on July 16, 2014. (*See* Mot. at 3; ECF No. 16; Order; ECF No. 17.) Thus, the Court will deny Ruff's motions for default judgment regarding these defendants.

4

Ruff's Amended Motion to Remand, Ruff's claims require interpretation of the terms contained in the 2004 CBA. (*See* Report & Recommendation at 4; ECF No. 39.)[3] Because the resolution of each claim requires interpreting the CBA, Section 301 of the Labor Management Relations Act preempts Ruff's claims. *See Mattis v. Massman*, 355 F.3d 902, 906 (6th Cir. 2004) (holding that a claim is preempted if its resolution requires interpreting a collective bargaining agreement).

Still, Ruff insists that his complaint "does not invoke rights or procedures under any [CBA] and[] merely mention[s] the 2004 collective bargaining agreement in question in an effort to identify with clarity the agreement from which this action stem[s]." (Opp. at 4.) The complaint, according to Ruff, alleges violations of the deferment agreement that he executed with his employer and Local 47 (Severance Agreement; ECF No. 2-2), which "established the existence of a viable contractual agreement . . . independent from the 2004 collective bargaining agreement." (Opp. at 7.) But the deferment agreement merely implements the deferment option set forth in the CBA. (*See* CBA at 19 ("In the event an eligible employee wishes to remain on the plant seniority list, for the purpose of possible recall, he may elect to defer acceptance of his severance pay for a period of twelve (12) months.").) Thus, Ruff's allegations that turn on the deferment agreement are still preempted by federal law and removal was still appropriate. *See Mattis*, 355 F.3d at 206 ("If the rights were created by the collective bargaining agreement, the claim is preempted."); *cf.* Compl. ¶ 21 (alleging injuries that were a direct and proximate result of "defendants acts or action of failure to perform its duties under the terms and provisions of the 2004 collective bargaining agreement *and its deferment provision*") (emphasis added).

---

[3] To the extent that Ruff objects to the Magistrate Judge's conclusions in her report and recommendation, the Court overrules these objections, as Ruff's complaint clearly alleges violations of the 2004 CBA and the duties imposed by that agreement.

Ruff also filed a motion for reconsideration and clarification of this Court's decision to deny his amended motion to remand, rehashing his argument that the rule of unanimity was not satisfied during removal. (ECF No. 44.) This motion will be denied because, as this Court previously explained, Local 57's Notice of Removal satisfied the rule of unanimity. (See Opn. & Order at 4-5; ECF No. 43.) That notice attested to obtaining the consent of International and Pension Fund, and in the Sixth Circuit, an attorney for one defendant may sign the notice of removal and certify that the remaining defendants consented to the removal. *See Harper v. AutoAlliance Int'l, Inc.*, 392 F.3d 195, 201-02 (6th Cir. 2004); *see also Cadez v. Residential Credit Solutions, Inc.*, No. 13-10772, 2013 WL 2238486, at *3 (E.D. Mich. 2013). And International's and Pension Fund's attorneys did not need to be admitted *pro hac vice* before verbally consenting to removal on behalf of their clients. *See Baiul v. William Morris Agency, LLC*, No. 13 CIV. 8683 KBF, 2014 WL 465708, at *3 (S.D.N.Y. Feb. 3, 2014); *see also City of Cleveland v. Deutsche Bank Trust Co.*, 571 F. Supp. 2d 807, 815 (N.D. Ohio 2008).[4]

## C. Conspiracy

Ruff alleges that International and Pension Fund conspired with each other and Local 57 to deprive him of his alleged rights under the 2004 CBA. (*See* Compl. ¶¶ 6, 26, 35, 43.) "To prevail on a claim of civil conspiracy, the plaintiff must establish: (1) a malicious combination; (2) involving two or more persons; (3) injury to persons or property; and (4) the existence of an unlawful act independent from the actual conspiracy." *Lemaster v. Anchor Hocking LLC*, No. 2:11-CV-549, 2012 WL 3224094, at *4 (S.D. Ohio Aug. 6, 2012) (internal quotation marks

---

[4] Therefore, Ruff's request to strike "any/all motions, pleadings and/or request by these defendants" because of the alleged improper removal will be denied. (*See* Mot. Reconsideration and Clarification at 11; ECF No. 44.)

6

omitted); *see also Wertz v. Vill. of W. Milgrove*, No. 3:08 CV 604, 2009 WL 1183155, at *7 (N.D. Ohio Apr. 30, 2009).

According to Ruff's complaint, the defendants knowingly provided each other inaccurate information and documents to be placed in his permanent employment records. (Compl. ¶ 26.) "In particular," he asserts, "the defendants aided and abetted and conspired with such other defendants to misrepresent material facts in this action through its [sic] self-serving act of causing the placement of an erroneous retiring (withdrawal) card into the plaintiff's records." (*Id.*)

These threadbare conclusions fail as a matter of law. "[C]onspiracy claims must be pled with some degree of specificity and . . . vague and conclusory allegations unsupported by material facts will not be sufficient to state such a claim." *Spadafore v. Gardner*, 330 F.3d 849, 854 (6th Cir. 2003). Ruff alleges no facts that give rise to any express or implied agreement between International and Pension Fund to accomplish a common objective to injure him. The complaint does not, for example, identify when the alleged conspiracy was formed or what role these defendants played. In his opposition, he asserts that "his records and such other written instruments" were created "solely" by Local 57, who then forwarded to International and Pension Fund "upon agreement or through formal request and[] that such documents were a vital part of these defendants decision making procedure" for pension benefits. (Opp. at 9.) But there are still no factual allegations as to what was incorrect about the retirement card or any other documents. And, there are no allegations concerning how these documents led to Ruff's ineligibility for benefits. (*Cf. id.* (alleging that the retirement card was a "vital part" of the "decision making procedure relevant to [Ruff's application for pension benefits").) Ruff's allegations of conspiracy are too vague and conclusory to survive a motion to dismiss. *See*

7

*Humprhries v. Chicarelli*, No. 1:10-CV-749, 2012 WL 368255, at *5 (S.D. Ohio Feb. 3, 2012) (holding "conclusory allegation that [defendant] conspired with the other Defendants does not raise [plaintiff's] 'right to relief above the speculative level'"); *Leisure v. Franklin Cnty. Court of Common Pleas*, No. 2:05-CV-1123, 2006 WL 1281764, at *4 (S.D. Ohio May 8, 2006) ("Plaintiff's Amended Complaint falls far short of what is required to state a claim of civil conspiracy. It contains only conclusory allegations that 'Defendants' conspired against her to silence her whistleblowing activities.").

**D. Agency Liability**

Ruff also appears to allege that International and Pension Fund violated a duty of fair representation. *See* Compl. ¶ 30 ("Defendants had a fiduciary relationship with plaintiff based on trust and confidence . . . such defendants owed to plaintiff a fiduciary duty to perform collective bargaining duties in good faith."); *see also* Compl. ¶ 21 (alleging injuries "a direct and proximate result of the defendants acts or action of failure to perform its [sic] duties under the terms and provisions of the 2004 collective bargaining agreement and its deferment provision"). Ruff must plead facts showing that the defendants acted in an agency capacity. *See Small v. Int'l Bhd. Of Elec. Workers*, 626 F. Supp. 96, 98 (S.D. Oh. 1985) ("It has long been held that an international union is not *per se* responsible for the actions of its local."); *see also Feather v. United Mine Workers of Am.*, 711 F.2d 530, 540-41 (3d Cir. 1983) ("This Court has held . . . that the Union and the Pension Fund are two separate entities.") (internal citation omitted).

Ruff does not do so here. The CBA shows that Local 57 is the statutory collective bargaining agent and has the sole responsibility and authority to enforce the agreement. By its terms, the CBA is between the Columbus Bakery and Local 57. (*See* CBA at 1; ECF 29-2 ("[Bakery] recognizes [Local 57] as the exclusive bargaining agency for all the employees in the

8

bargaining unit.").) Neither International nor Pension Fund signed the document, and Ruff offers no factual allegations indicating that these defendants acted in an agency capacity. Moreover, as Ruff clarified in his opposition, Local 57 was the "undisputed" sole bargaining agent for him and other employees of the Columbus Bakery "and ha[d] the sole responsibility and authority to enforce the[] [2004 CBA]." (Opp. at 5.) Thus, his allegations have not shown that these defendants owed him a duty of fair representation or other similar duty under the 2004 CBA. *See Barrett v. Ebasco Constructors, Inc.*, 868 F.2d 170, 171 (5th Cir. 1989) ("If a union does not serve as the exclusive agent for the members of the bargaining unit with respect to a particular matter, there is no corresponding duty of fair representation."). Because Ruff makes no allegations from which the Court could find International or Pension Fund liable for the acts of Local 57, the Court dismisses the allegations based on agency liability. *See Small*, 626 F. Supp. at 98-100 (S.D. Ohio 1985) (dismissing International Union because no duty of fair representation owed); *Yates v. Yellow Freight Sys.*, 501 F. Supp. 101, 104 (S.D. Ohio 1980) (same).

**E. Collective Bargaining Agreement Violations**

Ruff alleged violations of the 2004 CBA in his Complaint. Specifically, he alleged that the defendants knew that the Bakery "was knowing[ly] scheduling and mandating overtime" and allegedly failed to "inform[] plaintiff of open and/or available jobs and/or positions in the work force" in violation of a contractual duty to do so. (Compl. ¶¶ 20-21.)

But in Ruff's Opposition to the Motion to Dismiss, he states that he made "no averments that defendants [I]nternational or . . . [P]ension were duly obligated under a collective bargaining agreement to perform any duties or tasks relevant to this plaintiff." (Opp. at 4.) Moreover, as noted earlier, Ruff clarified that Local 57 "ha[d] the sole responsibility and authority to enforce

the[] [2004 CBA]." (Opp. at 5.) Thus, all claims against International and Pension Fund that stem from alleged violations arising from the CBA are dismissed. (*See* Compl. ¶¶ 20, 21, 41, 43, 44.)[5]

Ruff, in his Opposition, asserts that that the deferment agreement—and not the CBA—"establish[] the existence of a viable contractual agreement." (Opp. at 7.) As explained above, that agreement implements the deferment option set forth in the 2004 CBA. (*See* Section III.B.) But in any event, this agreement does not establish a cause of action against International or Pension Fund because Ruff offers no allegations that these defendants had any duties under that agreement. And, the document itself does not mention these defendants or impose on them any duty to enforce it.

**F. Employment Records**

Last, Ruff charges that "defendants . . . knowingly provided such other defendants with misleading, misrepresented, incomplete and inaccurate information," which was allegedly placed in his permanent employment file. (Compl. ¶ 26.) Specifically, Ruff identifies an "erroneous retiring (withdrawal) card" that was placed in his records, allegedly causing the Pension Fund to deny his pension application. (*Id.* ¶¶ 26, 45.)

In his Opposition, Ruff clarifies that Local 57 created the employment history documents and that they "were forwarded to defendants [I]nternational and defendants [P]ension." (Opp. at 9.) And these documents, according to Ruff, "were a vital part of these defendants['] decision making procedure relevant to this plaintiff's application for pension benefits." (*Id.*)

---

[5] To the extent that Ruff alleged in his complaint that International made "representations and statements in support" of other defendants and "the veracity of their interpretation of the terms and provisions of the 2004 collective bargaining agreement" (Compl. ¶ 41), he makes no reference to the substance of these alleged interpretations and statements and does not explain how, if at all, they were erroneous or relevant to his failure to be recalled or to receive pension benefits.

But Ruff does not state what was false about the retiring card or the role that the card played in the denial of benefits. Because the conspiracy and agency allegations fail for the reasons described above, the Court concludes that any liability arising from these allegedly inaccurate documents would lie only with Local 57.

Ruff also alleges in his Opposition that International caused "obvious inaccurate and/or incomplete documents [to be] possibly prematurely entered into plaintiff's permanent employment records, which resulted in other defendants relying on the veracity of such statements of material facts as it may relate to this plaintiff's employment history." (Opp. at 7 (citing Exhibit 3).) Ruff does not explain how these unidentified documents caused him any injury. Instead, he refers to a letter that he attached to his complaint that was written by International's President to him, which states that Ruff "withdrew from our Union on September 30, 2004 when a retiring card was issued to you." (Ltr. at 3; ECF No. 2-1.) Again, the Court cannot determine the relevancy of this letter, as it does not show that International caused the retiring card (or any other unnamed document) to be placed in Ruff's employment record prematurely. And in both his Complaint and Opposition, Ruff does not explain the link between the retiring card and the denial of his pension benefits.[6] Therefore, Ruff's allegations that International and Pension Fund caused inaccurate information in his do not state a facially plausible claim.[7]

---

[6] According to an "information sheet" that Ruff attached to his Complaint, the card simply preserved his union membership during his one-year layoff and saved him money by suspending both his obligation to pay dues during his layoff and the cost of re-initiation had he returned to work. (Retiring (Withdrawal) Card Information Sheet; ECF No. 2-2.)

[7] To the extent Ruff challenges the Court's previous denial of his motion to compel, the Court overrules these objections because it finds discovery inappropriate at this stage in the litigation. *See Estate of Barney v. PNC Bank, Nat. Ass'n*, 714 F.3d 920, 929 (6th Cir. 2013) (holding that sheer possibility that discovery would allow plaintiffs to establish a claim is not sufficient to deny a motion to dismiss).

### G. Motion to Strike

Ruff moved to strike International and Pension Fund's motion to dismiss. Under Fed. R. Civ. P. 12(f), the Court may strike "any redundant, immaterial, impertinent, or scandalous matter." Ruff argues that the 2004 CBA, and all references to the document, should be stricken because it "is not the collective bargaining agreement relevant to this action." (Opp. at 6.) But Ruff acknowledges that the 2004 CBA went into effect over a month before his layoff and extended almost three years beyond the end of his deferment period. (*See* Opp. at 6; *see also* Severance Worksheet at 2-1.) Moreover, he fails to identify which version of the CBA he believes should apply to his claims. And, his complaint makes repeated reference to a 2004 collective bargaining agreement. (*See, e.g.*, Compl. ¶¶ 16-17, 19-21, 24-26.)The Court will deny the motion to strike, as the CBA, by its plains terms and Ruff's own admission, is the controlling document in this action.

### IV. CONCLUSION

For the reasons outlined above, International and Pension Fund's motion to dismiss (ECF No. 29) is **GRANTED** and the claims against these defendants are **DISMISSED WITH PREJUDICE**. Ruff's Motion to Strike (ECF No. 32) is **DENIED**. Ruff's Motion for Reconsideration and Clarification (ECF No. 44) is **DENIED**. Ruff's Motions for Default Judgment against International, Pension Fund, and Local 57 (ECF Nos. 46, 48, 50) are also **DENIED**.[8]

---

[8] Like Ruff's motions for default judgment against International and Pension Fund, Ruff moved for default judgment against Local 57, again averring in an affidavit that the defendant was served on May 27, 2014 and failed to timely respond. (Aff. ¶ 2-3; ECF No. 50-1.) Again, Ruff does not explain how he knows when these defendants were served, *see* Fed. R. Evid. 602, and the record shows Local 57 timely responded, as it was served on May 30, 2014 and filed a notice of removal on June 19, 2014. (*See* Notice of Removal; ECF No. 1.) Under Fed. R. Civ. P. 81(c)(2)(C), an answer was due by June 26, 2014. Before that deadline expired, Local 57 moved

**IT IS SO ORDERED.**

___2-11-2015___  
**DATE**

/s/ _____  
**EDMUND A. SARGUS, JR.**
**CHIEF UNITED STATES DISTRICT JUDGE**

---

for an extension of time to file its answer, which was granted. (*See* ECF Nos. 5 & 6.) Local 57 then responded to Ruff's complaint within that extended time period. (*See* ECF No. 24.) Thus, Ruff's motion for default judgment against Local 57 is without merit.